# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ABDIFITAH JAMA ADAN,

       Plaintiff,

   v.

HEATHER WEYKER, *in her individual capacity as a St. Paul Police Officer*; ROBERT ROES 1-3, *in their individual and official capacities as supervisory members of the St. Paul Police Department*; THE CITY OF ST. PAUL; JOHN BANDEMER, *in his individual and official capacities as a St. Paul Police Sergeant*,

       Defendants.

Case No. 16cv1235 (JNE/TNL)
ORDER

## I.     INTRODUCTION

Plaintiff Abdifitah Jama Adan alleges violations of his constitutional rights in an investigation that led to his indictment by a federal grand jury and his subsequent arrest. He sues Defendants Heather Weyker, a police officer for the St. Paul Police Department in Minnesota; John Bandemer, a St. Paul Police Department sergeant who is alleged to have been Weyker's supervisor; Robert Roes 1-3, who are allegedly supervisory St. Paul police officers; and the City of St. Paul ("St. Paul"). Weyker and Bandemer move to dismiss Adan's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and on absolute and qualified immunity grounds. Dkt. No. 36. St. Paul moves on behalf of the City of St. Paul and Robert Roes 1-3 for judgment on the pleadings pursuant to Rule 12(c). Dkt. No. 45.

The investigation at the core of Adan's civil complaint targeted a suspected venture involving the sex-trafficking of minor girls across Minnesota, Tennessee, and Ohio. The investigation resulted in the criminal indictment of thirty people, mostly Somali, in the Middle

District of Tennessee in 2010-2011 ("Tennessee Case"). Adan alleges that Weyker fabricated

evidence about him and others throughout the investigation, resulting in a tainted indictment that

was further corrupted by Weyker's continuing deception, and causing his arrest and detention

without probable cause. Adan pleaded guilty to one of the counts of the First Superseding

Indictment on which he was arrested. The count on which he was convicted pursuant to his

guilty plea was unconnected to any alleged sex-trafficking.

Nineteen of Adan's co-defendants in the Tennessee Case bring separate suits similarly

alleging constitutional violations, and a twenty-first person brings another related civil suit. The

parties agreed to coordinated briefing on the Defendants' motions. The Court assumes

familiarity with its fuller opinion in one of the related cases, *Osman v. Weyker, et al.*, No.

16cv908 ("Osman Opinion") (filed simultaneously herewith), and will not repeat that opinion's

discussion verbatim here, given the overlap in allegations and arguments. Adan is represented

by the same attorneys as the plaintiff in that case, and their attorneys filed consolidated

opposition papers to the Defendants' motions. *See* Osman Pls.' Opp. to St. Paul Mot., Dkt. No.

50; Osman Pls.' Opp. to DOJ Mot. to Dismiss ("Osman DOJ Opp."), Dkt. No. 56.

The Court held a hearing on Defendants' motions on May 3, 2017, and now grants both

motions.[1]

## II.     APPLICABLE STANDARDS

A motion to dismiss or a motion for judgment on the pleadings is appropriate to grant

"only when there is no dispute as to any material facts and the moving party is entitled to

judgment as a [m]atter of law." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (citation

---

[1] The United States also filed a Motion to Substitute and Dismiss, which was mooted by stipulation as recognized by the March 6, 2017 Order Permitting the Osman Plaintiffs to Amend Complaints. Dkt. No. 60. Pursuant to that order, Adan filed a First Amended Complaint [Dkt. No. 61] ("FAC"), which is thus the operative complaint subject to these Rule 12 motions.

omitted).  To survive a Rule 12 motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Haney v. Portfolio Recovery Assocs., LLC*, 837 F.3d 918, 924 (8th Cir. 2016), *as amended* (Dec. 27, 2016).  *See also* Osman Op. 3-4.

### III.    ALLEGATIONS

Most of the salient allegations are similar to those alleged by Osman and summarized and analyzed in the Court's order in that case.  *See, e.g.*, Osman Op. 4-8.  The Court briefly recounts some allegations in Adan's First Amended Complaint and other facts gleaned from the Tennessee Case record.

In 2010, Adan lived in Nashville, Tennessee, with his then-wife Faduma Mohamed Farah and their children.  FAC ¶¶ 10-11.

A First Superseding Indictment was filed in the Tennessee Case on November 3, 2010, naming 29 defendants.[2]  The indictment alleged that Adan was an associate of members of Minneapolis-based gangs referred to as the Somali Outlaws and the Somali Mafia.  FSI ¶¶ 1(a)-(b), 1(e) & 1(f).  It charged Adan with three counts: two counts of participation in a sex-trafficking conspiracy in violation of 18 U.S.C. § 1591(a) (Counts 1 and 2); and one count of making and using a false writing in violation of 18 U.S.C. § 1001 (Count 22).  *See* First Superseding Indictment ("FSI"), *United States v. Adan*, No. 3:10cr260, Dkt. No. 36 (M.D. Tenn. Nov. 3, 2010) (submitted as Ex. V in support of Weyker and Bandemer's Reply in this civil case).  The indictment charged that "in or about 2000 through in or about 2006," Adan

---

[2] Adan's complaint does not refer to the First Superseding Indictment, but counsel has acknowledged it.  *See* Dkt. No. 66.  Because the indictment is a matter of public record, the Court may take judicial notice of it and other documents in the Tennessee Case record. *Greenman*, 787 F.3d at 887.

"transported and caused the transportation and harbored Somali females who had not attained the age of 14 years and had not attained the age of 18 years for the purpose of commercial sex acts . . . ." FSI ¶ 61; *see also* FAC ¶ 17. Adan alleges that the indictment's "bare and conclusory" allegation in Paragraph 61 "is and always was false" and unsupported. FAC ¶¶ 17-18. His then-wife F. Farah was also indicted in Counts 1 and 2, among others, and overt acts were pleaded to connect F. Farah to the prostitution of alleged sex-trafficking victim Jane Doe One in 2005 through 2008. *See, e.g.*, FSI ¶¶ 5-6, 96.

The allegations as to Adan in Count 22 of the First Superseding Indictment were more detailed: "On or about November 17, 2009," Adan made or used a false document in a matter within the jurisdiction of a United States agency, knowing the document to contain a materially false statement. FSI 53.[3] More precisely, he "filed, in Nashville, Tennessee, a signed I485 Application to Register Permanent Residence or Adjust Status with the United States Citizenship and Immigration Services." *Id.* The indictment alleged that in the I-485 application, Adan falsely stated, among other things, that he had never been arrested for a criminal offense and had not received public assistance in the United States, even though he knew that he had been convicted on a drug-possession felony in the fifth degree on September 28, 2004 in Ohio, that he had been arrested on September 26, 1999 by Border Patrol in Montana, and that he had received public assistance in the form of Section 8 housing for almost a year in 2003-2004. *Id.* at 53-54. Adan alleges that he "was charged with this count in order to pressure him into providing evidence about the fabricated sex-trafficking ring." FAC ¶ 43.

---

[3] Adan acknowledges that his complaint mistakenly implies that he was first charged with the false-statement count in the Second Superseding Indictment, which was filed after he was arrested. *See* FAC ¶¶ 42-43; Adan Ltr., Dkt. No. 66.

The "thrust" of the sex-trafficking conspiracy counts was that Adan "was engaged in a conspiracy to recruit and transport minors for the purpose of engaging in commercial sex acts." FAC ¶ 14. "No such conspiracy existed, and Defendants knew it." *Id.* Adan alleges upon information and belief that he "was only roped into this conspiracy because his ex-wife, Farah, once had an argument with the woman identified in the Indictment as 'Jane Doe Five.'"[4] FAC ¶ 19. It was "well-known in the Nashville Somali community that Jane Doe Five was, to put it lightly, an unstable woman, and that any statements given by her could never be worthy of belief." FAC ¶ 20. Weyker was the lead investigator on the case. FAC ¶ 26. Because of the argument with F. Farah, "when Weyker approached the unstable Jane Doe Five to solicit patently and knowingly false statements implicating any Somalis in Nashville in this non-existent sex-trafficking conspiracy, Jane Doe Five agreed to falsely implicate Farah, her husband Adan, and some of their community acquaintances in Weyker's phony case." FAC ¶ 19. Weyker built a "phony case against Adan" using Jane Doe Five's false testimony, false statements by "other easily manipulated witnesses, as well as Weyker's own documentary and testimonial fabrications." FAC ¶ 21.

On November 8, 2010, Adan and his wife were arrested. FAC ¶ 15. Like Osman, because the indictment charged Adan with sex-trafficking-related offenses, he was subject to a rebuttable presumption of pretrial detention and was ordered detained pending trial. FAC ¶ 16.

Like Osman, Adan alleges that Weyker fabricated "the overwhelming majority of the critical evidence supporting the indictments in this alleged conspiracy," FAC ¶ 25; that Weyker manipulated and coerced Jane Doe witnesses, including Jane Doe Five, into lying, FAC ¶¶ 32, 34; that Weyker was motivated to falsify evidence by a desire for glory, FAC ¶ 1; that Weyker

---

[4] None of the indictments ever specifically referred to Jane Doe Five, but there were references to "other females" who were allegedly sex-trafficked. *See, e.g.*, FSI ¶ 6.

"worked with almost no supervision by her employer and principal" the St. Paul Police

Department, FAC ¶ 36; and that indications of Weyker's fabrication included her rough notes,

questions surrounding Jane Doe Two's age, the acquittals of nine co-defendants who went to

trial, and remarks about Weyker by the district and appellate courts in the Tennessee Case, FAC

¶¶ 29, 30, 32, 39-40, 47-49, 52.  Specific to his case, Adan asserts that a Sixth Circuit opinion

"recognized that any evidence supplied by Jane Doe Five, the main 'witness' against Adan, was

particularly 'unworthy of belief' and that she 'ha[d] been diagnosed as insane and was off of her

medication at trial.'"  FAC ¶ 50 (quoting *United States v. Fahra*, 643 Fed. Appx. 480, 484, 486

(6th Cir. 2016)).

In March 2012, Adan pleaded guilty to the false-statement charge, and in June 2012, a

sentencing judgment was entered against him on Count 22, and Counts 1 and 2 were dismissed.

FAC ¶¶ 44-45; *United States v. Adan*, No. 3:10cr260, Dkt. No. 2114 (M.D. Tenn. Mar. 23, 2012)

(plea hearing minutes); *id.*, Dkt. No. 2602 (June 2012 sentencing judgment).  He received credit

for time served and was released in June 2012 on supervised release.  FAC ¶ 46.

### IV.      SUMMARY OF ARGUMENTS

A summary of the parties' arguments on these consolidated motions is included in the

Osman Opinion at pages 8-10.

### V.      LEGAL ANALYSIS

As explained fully in the Osman Opinion, pursuant to *Manuel v. City of Joliet*, 137 S. Ct.

911 (Mar. 21, 2017), Adan's claims sound, if at all, in the Fourth Amendment, not the Fifth or

Fourteenth Amendment.  *See* Osman Op. 11-13; *see also id.* at 17-22.  Adan's complaint is that

"[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise

restrict [his] liberty."  FAC ¶ 1.  In other words, his complaint is "that a form of legal process

resulted in pretrial detention unsupported by probable cause." *Manuel*, 137 S. Ct. at 919. So "the right allegedly infringed lies in the Fourth Amendment." *Id.* A "constitutional division of labor" applies to claims similar to Adan's. *Id.* at 920 n.8. Thus, because he challenges his pretrial detention, his claim is under the Fourth Amendment, but if he had been convicted and were to challenge the sufficiency of the evidence supporting that conviction, his claim would then be under the Due Process Clause of the Fourteenth Amendment because "once a trial has occurred, the Fourth Amendment drops out." *Id.*

The Court thus rejects the substantive due process claims on the basis of *Manuel*, but it also notes that to the extent these claims rely on the allegation that Adan was held in custody, rather than released on bond, because of the fabricated evidence supporting the sex-trafficking conspiracy charges, *see* FAC ¶ 16, this argument for a substantive due process claim fares no better. The Bail Reform Act requires a court to hold a detention hearing if the government moves to detain a pretrial defendant in a case that charges a violation of 18 U.S.C. § 1591. 18 U.S.C. § 3142(f)(1)(A) (2008). In that hearing, a number of procedural rights are afforded by the statute. *See id.* § 3142(f); *United States v. Stephens*, 594 F.3d 1033, 1038 (8th Cir. 2010). The court must consider (1) "the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). If the court determines by clear and convincing evidence that there is no combination of conditions that could "reasonably assure the appearance of such person as required and the safety of any other person and the community," *id.* § 3142(f), then the court "shall order" the defendant's detention pending trial, *id.* § 3142(e). Although in a case

7

in which the judge "finds that there is probable cause to believe that the person committed

. . . an offense involving a minor victim under section . . . 1591," it "shall be presumed" that

detention is necessary, that presumption may be rebutted by other evidence at the detention

hearing. *Id.* § 3142(e)(3)(E). Moreover, the defendant's presumption of innocence remains in

force at the detention hearing. *Id.* § 3142(j). Adan does not allege any facts about his detention

hearing. Even crediting his allegations that Weyker fabricated evidence of a sex-trafficking

conspiracy and fooled the grand jury into indicting him on those charges, *see* FAC ¶ 28, the

Court could not reasonably infer that the sex-trafficking-related charges caused him to be held in

custody, because the § 3142 presumption was rebuttable and multiple factors had to be

considered. "The Government must first of all demonstrate probable cause to believe that the

charged crime has been committed by the arrestee, but that is not enough." *United States v.

Salerno*, 481 U.S. 739, 750 (1987). "In a full-blown adversary hearing, the Government must

convince a neutral decisionmaker by clear and convincing evidence that no conditions of release

can reasonably assure the safety of the community or any person." *Id.* Adan was entitled, for

example, to an evaluation of the weight of the evidence against him, yet he does not allege that

Weyker played any role in tainting any such separate judicial determination, nor that she affected

a judge's review of any other factors. The silence in Adan's complaint on this topic leaves open

the possibility that he waived his right to a hearing. More importantly, the record reflects that

even after the trial of the nine co-defendants, a panel of the Sixth Circuit found that six of his co-

defendants should remain in custody pending trial or retrial, based in part on an evaluation of the

weight of the evidence at trial. *United States v. Fahra*, No. 13-5296, Dkt. No. 61-1 (6th Cir.

Dec. 18, 2013) (submitted in this case at DOJ Reply Ex. BB). This fact further reinforces a

conclusion that Adan fails to plausibly allege substantive due process violations on the basis of a § 3142 presumption.

Under the Fourth Amendment analysis, the Court must decide whether Adan plausibly alleges that the Defendants violated his right to be free from unreasonable seizure by arresting and detaining him without arguable probable cause, based on fabricated evidence.

As Adan concedes, to evaluate whether a person's Fourth Amendment right has been violated by an arrest pursuant to a warrant that lacked probable cause, the court applies the analysis set out in *Franks v. Delaware*, 438 U.S. 154 (1978). *See* Adan Ltr. of July 12, 2017, at 2, Dkt. No. 69; *see also Hawkins v. Gage Cty.*, 759 F.3d 951, 958-59 (8th Cir. 2014); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101, 105 (1st Cir. 2013).

### a. Analysis of Adan's Claim Under the Fourth Amendment

Adan concedes that his Fourth Amendment claim fails because there was probable cause to arrest him on the false-statement charge to which he eventually pleaded guilty. Adan Ltr. of July 12, 2017, at 2. The concession is wise. Adan does not allege, with well-pleaded facts, that there was no probable or arguable probable cause to arrest him on the false-statement count in November 2010. He summarily alleges that "[b]ut for the evidence Weyker fabricated, no probable cause existed to detain or otherwise restrict Adan's liberty," FAC ¶ 1, and he alleges that he would not have been held in custody if not for a presumption that arose because he was charged with the sex-trafficking charges, *id.* ¶ 16. Even if the outcomes of the 2012 trial arguably cast some doubt on whether probable cause existed as to the sex-trafficking-related conspiracy, the trial did not involve the false-statement charge, because the district court had ordered Count 22 and some other counts to be tried separately. *See United States v. Adan*, No. 3:10cr260, Dkt. No. 1395 (M.D. Tenn. Feb. 16, 2012). Adan alleges that Count 22 was added

9

for improper reasons: "in order to pressure him into providing evidence about the fabricated sex-trafficking ring." FAC ¶ 43. But he does not allege that there was no probable cause to support the false-statement charge, and the fact that he pleaded guilty to Count 22 foils any argument that the charge lacked probable cause. *Malady v. Crunk*, 902 F.2d 10, 12 (8th Cir. 1990). Therefore, Adan's complaint must fail because he does not plausibly allege that there was no probable or arguable probable cause to arrest him on Count 22 on November 8, 2010. *Greenman v. Jessen*, 787 F.3d 882, 889 (8th Cir. 2015) (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Keil v. Triveline*, 661 F.3d 981, 986 (8th Cir. 2011).

Taking as true Adan's allegations that Weyker fabricated the evidence supporting the sex-trafficking charges, the Court is not unsympathetic to the argument that Adan's pretrial detention was more difficult because of those charges. *See* FAC ¶ 60. But detention comes in different forms and is a restraint on liberty in any form. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty."). The Fourth Amendment does not distinguish between the forms of pretrial detention.

Defendant Weyker is entitled to qualified immunity. Adan has failed to plausibly allege a constitutional violation.

### b. Supervisory Liability

Adan sues Bandemer and Robert Roes 1-3 in their individual capacities as supervisors. He alleges that they were deliberately indifferent to but not direct participants in Weyker's alleged violations, and that "Weyker worked with almost no supervision." FAC ¶ 36. A supervisor sued in his or her individual capacity in a § 1983 or *Bivens* suit "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also S.M. v.*

*Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Like plaintiff Abdifatah Bashir Jama, Adan's

allegations related to supervision of Weyker are essentially identical to Osman's and therefore

are equally deficient. *See* Order (filed simultaneously herewith) at Section V.b, *Jama v. Weyker,*

*et al.*, No. 16cv1230; *see also* Osman Op. 37-40. Moreover, given the Court's conclusion that

Adan has not adequately alleged a constitutional violation by Weyker, the supervisory liability

claims "automatically fail for lack of an underlying constitutional violation." *Mendoza v. U.S.*

*Immig'n & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017) (citing *City of Los Angeles v.*

*Heller*, 475 U.S. 796, 798-99 (1986)).

Adan's allegations fail to state a claim for supervisory liability, and Bandemer and Robert

Roes 1-3 are entitled to qualified immunity as to these counts.

### c. Municipal Liability

Adan sues St. Paul as well as Bandemer and the Robert Roes in their official capacities

for municipal liability under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S.

658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely

by its employees or agents." *Id.* at 694. "Instead," a municipality is liable "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury . . . ." *Id*. A plaintiff therefore

must show that there is an "official" policy or a "custom or usage with the force of law." *Kelly v.*

*City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016). A fuller overview of relevant law is

included in the Osman Opinion. *See* Osman Op. 41-42.

Adan alleges that Weyker acted alone, with little supervision. *See, e.g.*, FAC ¶ 36. He

does not allege facts to support conclusory allegations that Weyker or other St. Paul Police

Department employees fabricated evidence in other investigations. For the same reasons given in the Osman Opinion, *see* Osman Op. 41-42, Adan's municipal liability allegations also fail.

## VI.     Conclusion

Defendants are entitled to qualified immunity on all counts, because Adan's complaint fails to plausibly allege a violation of his constitutional rights. The Court grants the Defendants' motions and dismisses with prejudice. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060-61 (8th Cir. 2013); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 635 (8th Cir. 2010).

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Heather Weyker and John Bandemer's Motion to Dismiss [Dkt. No. 36] is GRANTED.

2. Defendant City of Saint Paul's Motion for Judgment on the Pleadings [Dkt. No. 45] is GRANTED.

3. Plaintiff Abdifitah Jama Adan's First Amended Complaint is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 9, 2017                                         s/ Joan N. Ericksen
                                                              JOAN N. ERICKSEN
                                                              United States District Judge